United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ANTHONY S. HAMER,

Plaintiff,

v.

JP MORGAN CHASE LONG-TERM DISABILITY BENEFIT PLAN, et al.,

Defendants.

Case No. 22-cv-06886-LB

**ORDER GRANTING MOTION TO TRANSFER VENUE**

Re: ECF Nos. 19, 26

**INTRODUCTION**

This is an employee-benefits dispute over the long-term disability benefits that were paid to Kenneth Morrison, a deceased former Vice President of JP Morgan Chase. Mr. Morrison, who worked in New York City and lived in Connecticut, became permanently disabled when he was struck by a taxi in 1995. From then until his 2022 death, he was paid benefits under Chase's long-term disability plan for its employees. Plaintiff Anthony Hamer, who now lives in San Francisco, was Mr. Morrison's supervisor at Chase and is the successor trustee of Mr. Morrison's trust and the co-conservator of his estate. Mr. Hamer alleges that the defendants — the JP Morgan Chase, N.A. Long Term Disability Benefit Plan, JP Morgan Chase, N.A. (the plan sponsor), and Prudential Insurance Company of America (the plan administrator) — underpaid the benefits due to Mr. Morrison (because they underreported his base salary at the time of his injury) and failed to follow a proper claims-handling process (mainly by failing to maintain the relevant documents

from the 1990s). There are six claims for violations of the Employee Retirement Income Security Act (ERISA): two for monetary relief and four alternative claims for equitable relief (such as changed claims-handling procedures).[1]

The defendants moved to dismiss the alternative claims for equitable relief under Federal Rules of Civil Procedure 12(b)(1) (for lack of standing) and 12(b)(6) (on the ground that the claims are time-barred and foreclosed because monetary relief is available).[2] The defendants also moved to transfer the case to the District of Connecticut as a more convenient venue under 28 U.S.C. § 1404(a), on the ground that all relevant events happened there.[3] The court grants the motion to transfer venue and declines to decide the motion to dismiss.

## STATEMENT

### 1. General Factual Background

Mr. Hamer is the Co-Conservator of the Estate of Kenneth S. Morrison and the Successor Trustee of the Kenneth S. Morrison Special Needs Trust.[4] Mr. Morrison was a Vice President and Head Options Trader for the "North America USD Interest Rate Derivative Trading Division" at Chase Manhattan Bank (now known as JP Morgan Chase).[5] When he was struck by a New York City taxi in 1995, he suffered a traumatic brain injury, triplegia, and aphasia.[6] He then lived in skilled-care residential-living facilities until 2003, when his funds ran out and he became a ward of the state of Connecticut and was moved to a nursing home.[7] He died in March 2022 because of injuries suffered in the accident.[8]

---

[1] Compl. – ECF No. 1; Williams Decl. – ECF No. 26-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. to Dismiss – ECF No. 19.

[3] Mot. to Transfer Venue – ECF No. 26.

[4] Compl. – ECF No. 1 at 2 (¶ 3).

[5] *Id.* at 4 (¶ 9).

[6] *Id.* (¶ 8).

[7] *Id.* at 6–7 (¶ 15).

[8] *Id.* at 4 (¶ 8).

From 1996 until his death, Mr. Morrison received long-term disability benefits under Chase's long-term disability benefits plan for employees. The plan entitled him to benefits equal to sixty percent of his monthly base salary as of the date he became disabled.[9] His annual pay at the time of his accident consisted of $100,000 in salary, $200,000 in non-discretionary shift differential (owing to his 70–80 hour work weeks), and a $122,000 discretionary incentive bonus (in the year preceding the injury).[10] When Chase's Human Resources Department completed his initial long-term disability benefit application, it listed his monthly base salary as $100,000 only. His monthly benefit under the plan was thus determined to be $5,000. Mr. Hamer alleges that Chase should have included Mr. Morrison's $200,000 non-discretionary shift differential in his monthly base salary, which would have resulted in a $15,000 monthly benefit.[11]

In addition, Chase allegedly knew that it miscalculated Mr. Morrison's benefits as of 2003, when he became a ward of the state. And when Mr. Hamer submitted an administrative claim for the underpayment of benefits in September 2020, and then pursued an administrative appeal, the defendants allegedly mishandled the process, including by not obtaining the operative 1995 plan document or Mr. Morrison's compensation records.[12]

**2. Facts Relevant to Determining the Most Convenient Venue**

Mr. Morrison started working for Chase in October 1987.[13] At the time of his 1995 injury, he lived in Connecticut and worked in New York City. He continued to live in Connecticut until his death in 2022. He thus received his long-term disability benefits in Connecticut. His medical providers were in Connecticut too.[14]

---

[9] *Id.* at 5 (¶ 12).

[10] *Id.* at 4–5 (¶¶ 10–11).

[11] *Id.* at 5–6 (¶¶ 12–14).

[12] *Id.* at 6–9 (¶¶ 15–22).

[13] Nese Decl. – ECF No. 26-2 at 2 (¶ 4).

[14] Compl. – ECF No. 1 at 4 (¶ 9); Williams Decl. – ECF No. 26-1 at 2–3 (¶¶ 6–9).

"Chase regularly conducts business and has employees, offices, and retail locations in the state of Connecticut."[15] Its principal place of business is in New York City and it is authorized to conduct business in California.[16] Chase's "U.S. Benefits Design & Strategy Manager" is "not aware of Chase performing administrative services for Mr. Morrison's [long-term disability] claim from within the State of California."[17]

Prudential's headquarters is in Newark, New Jersey.[18] It "maintains offices in Connecticut" and "provides insurance to individuals and administers the claims of numerous individuals residing in Connecticut."[19] Mr. Hamer "is informed and believes that Prudential does substantial business in the State of California, providing disability claims administration services to corporations throughout the State of California."[20]

Prudential started administering Mr. Morrison's benefits in 2018.[21] During the time it administered the benefits, Prudential exchanged "numerous written communications" with Mr. Morrison, his brother Douglas, and his attorneys, all of whom were located in Connecticut.[22] Prudential's first contact with anyone in California concerning Mr. Morrison's benefits was when Mr. Hamer first contacted Prudential in March 2019.[23] Prudential also processed Mr. Hamer's administrative claim concerning Mr. Morrison's benefits, starting in September 2020.[24]

---

[15] Nese Decl. – ECF No. 26-2 at 2 (¶ 3).

[16] Compl. – ECF No. 1 at 3 (¶ 5).

[17] Nese Decl. – ECF No. 26-2 at 2 (¶ 5).

[18] *Prudential Ins. Co. of Am. v. DiMuzio*, No. 219CV2879DRHAKT, 2021 WL 5771759, at *3 (E.D.N.Y. Dec. 6, 2021) (citing Prudential's complaint); *Prudential Ins. Co. of Am. v. Mason*, No. 419CV03228SALKDW, 2020 WL 13527400, at *1 (D.S.C. Feb. 4, 2020) (same); *Midkiff v. Prudential Ins. Co. of Am.*, No. 19-CV-01656-JSW, 2019 WL 12469793 (N.D. Cal. Dec. 6, 2019) (citing Prudential's declaration).

[19] Williams Decl. – ECF No. 26-1 at 2 (¶ 3).

[20] Compl. – ECF No. 1 at 3–4 (¶ 6).

[21] Williams Decl. – ECF No. 26-1 at 2 (¶ 5).

[22] *Id.* at 3 (¶ 10).

[23] *Id.* (¶ 12).

[24] Compl. – ECF No. 1 at 7–9 (¶¶ 16–21).

United States District Court
Northern District of California

Douglas Morrison was appointed "as conservator and the legally authorized fiduciary for Mr. Morrison" by a Connecticut probate court in 1995. At the time, Douglas lived in Connecticut, and he continued to live there at least through Mr. Morrison's death.[25]

Mr. Hamer has lived in San Francisco "at all times pertinent."[26] He was appointed as co-conservator of Mr. Morrison's estate by a Connecticut probate court in August 2020.[27] In October 2008, a Connecticut probate court also appointed him as the initial trustee of Mr. Morrison's trust. The reason Mr. Hamer was made trustee was his "close and long-standing relationship with Mr. Morrison as a friend and colleague."[28]

The trust was established in 2008 for the purpose of receiving Mr. Morrison's long-term disability benefits from Chase's long-term disability benefits plan.[29] Since then, Douglas Morrison, "through his attorney, [has] transferred payments of Mr. Morrison's long-term disability benefit payments from the [p]lan into a trust account held at the Bank of America in San Francisco." Mr. Hamer, as trustee, has then allocated payments to Mr. Morrison's medical providers and otherwise.[30] Some amount of the benefits payments that were paid to Douglas Morrison were not transferred to the trust account, though.[31] From January 2012 until 2020, Mr. Hamer resigned as trustee due to his employment obligations, and a replacement trustee (also based in Northern California) was appointed by the Connecticut probate court. During that time, Mr. Hamer helped with management of the trust.[32]

When Mr. Hamer was re-appointed as trustee in 2020 and pursued his administrative claim with Prudential for the alleged underpayment of benefits, he did so from San Francisco.[33] In

[25] Williams Decl. – ECF No. 26-1 at 2 (¶ 6), 3 (¶ 8).

[26] Compl. – ECF No. 1 at 3 (¶ 3).

[27] *Id.* at 4 (¶ 7).

[28] Hamer Decl. – ECF No. 30-1 at 2 (¶ 2).

[29] *Id.*

[30] *Id.* (¶ 3).

[31] *Id.* at 2–3 (¶ 4).

[32] *Id.* at 3 (¶ 5).

[33] *Id.* (¶ 6).

United States District Court
Northern District of California

October 2021, he obtained an order from the Connecticut probate court authorizing him to retain counsel in Northern California to pursue this lawsuit.[34]

**3. Relevant Procedural History**

The complaint has six claims. Claims one and six are for monetary relief: claim one is for benefits due under the plan, 29 U.S.C. § 1132(a)(1)(B) (against Prudential and the plan), and claim six is for statutory penalties for withholding documents, *id.* § 1132(c) (against Chase). The other claims are alternative claims for breach of fiduciary duty that seek equitable relief under § 1132(a)(3): claim two is for violation of § 1104(a)(1)(A)–(B) & (D) (against Chase and Prudential); claim three is for violation of § 1104(a)(1)(A)–(B) (against Chase for failing to monitor Prudential); claim four is for violation of § 1105(a)(3) (against Chase for co-fiduciary breach); and claim five is for violation of § 1059(a)(1) (against Chase for failure to maintain records).[35]

The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[36] *Id.* § 636(c).

**ANALYSIS**

The defendants filed two motions: a motion to partially dismiss the complaint under Rules 12(b)(1) and 12(b)(6) and a motion to transfer venue to the District of Connecticut under 28 U.S.C. § 1404(a).[37] The court transfers the case to the District of Connecticut and declines to decide the motion to dismiss.

Given that the court grants a convenience transfer under § 1404(a), declining to decide the motion to dismiss is appropriate. As for Rule 12(b)(6) motions to dismiss, courts regularly defer them for the transferee court to decide. *See, e.g.*, *Am. Trading Int'l, Inc. v. MCF Operating, LLC*,

[34] *Id.* at 3–4 (¶ 7); Prob. Ct. Order, Ex. A to Urquhart Decl. – ECF No. 34 at 19–30.

[35] Compl. – ECF No. 1 at 9–15 (¶¶ 26–58).

[36] Consents – ECF Nos. 4, 14–15.

[37] Mots. – ECF Nos. 19, 26.

United States District Court
Northern District of California

No. CV 19-5851-JFW(PLAX), 2019 WL 6139113, at *3 (C.D. Cal. Sept. 24, 2019) ("In light of the transfer of this action to the Southern District of Iowa [under § 1404(a)], the Court . . . [denies] without prejudice [the] [d]efendant's Motion to the extent it seeks to dismiss claims pursuant to Rule 12(b)(6)."); *S.F. Tech., Inc. v. Pfizer Inc.*, No. C 10-5597 SBA, 2011 WL 2462300, at *1 (N.D. Cal. June 20, 2011) (granting an unopposed motion to transfer venue under § 1404(a) and declining to reach a motion to dismiss under Rule 12(b)(6)). The point of a § 1404(a) motion to transfer, after all, is to "assess where [the] merits may be determined most conveniently." 15 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3841 (4th ed. 2023). Also, "[w]hen a federal question case is transferred under [§ 1404(a)], the transferee court generally applies its own circuit's interpretation of federal law." *Id.* § 3846 n.39 (collecting cases); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). Thus, the defendants' merits motion should be resolved in the transferee court.

Whether it is appropriate to decline to decide the defendants' Rule 12(b)(1) motion to dismiss is a closer question. In that motion, the defendants contend that the plaintiff lacks standing to pursue his four claims for equitable relief.[38] "[S]tanding is an aspect of subject matter jurisdiction[.]" *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106 n.4 (9th Cir. 2006). Section 1404(a) requires that the transferee court be one "where [the case] might have been brought," and that depends in part on whether the transferee court would have subject-matter jurisdiction. *Duffy v. Facebook, Inc.*, No. 16-cv-06764-JSC, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017); 15 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3845 & n.19 (4th ed. 2023). Also, it is a general rule that "[w]ithout jurisdiction[,] the court cannot proceed at all in any cause." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–32 (2007) (holding nonetheless that in the case of a *forum non conveniens* dismissal, which "is a determination that the merits should be adjudicated elsewhere," a district court may "bypass[] questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant").

[38] Mot. to Dismiss – ECF No. 19 at 14–15.

Here, though, even assuming that the defendants' Rule 12(b)(1) motion should be granted, it is only a partial motion: the transferee court would still have subject-matter jurisdiction over several claims. In this situation, the complaint "might have been brought" in the transferee court. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district."); *cf. Sinochem Int'l Co.*, 549 U.S. at 430–32. Thus, the court will decide only the motion to transfer venue.

**1. Legal Standard**

Under 28 U.S.C. § 1404(a), the court has discretion to transfer the case to a different district where the action "might have been brought" for the convenience of the parties and witnesses, in the interest of justice. 28 U.S.C. § 1404; *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 935 (N.D. Cal. 2020) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)).

The moving party has the burden to show that transfer is appropriate under § 1404(a). *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision to, rather than a codification of, the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood*, 349 U.S. at 32.

An action may be transferred to another court if (1) that court is one where the action might have been brought, (2) the transfer serves the convenience of the parties, and (3) the transfer will promote the interests of justice. *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citing 28 U.S.C. § 1404(a)). "A district court is one in which an action could

United States District Court
Northern District of California

have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper." *Duffy*, 2017 WL 1739109, at *3.

The Ninth Circuit has identified additional factors that a court may consider in determining whether a change of venue should be granted under § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. Courts may also consider "the administrative difficulties flowing from court congestion . . . [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft*, 454 U.S. at 258 n.6).

Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But when judging the weight to be given to plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum. *Id*. "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice "is entitled only minimal consideration." *Id*. This can be true "even if the plaintiff is a resident of the forum." *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, No. C 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013).

"When reviewing a § 1404(a) motion to transfer venue, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Fluence Energy, LLC v. M/V BBC FINLAND*, No. 3:21-cv-01239-BEN-JLB, 2022 WL 378197, at *5 (S.D. Cal. Feb. 8, 2022) (cleaned up).

United States District Court
Northern District of California

**2. Application**

To start, Mr. Hamer does not dispute that he could have filed the lawsuit in the District of Connecticut.[39] 29 U.S.C. § 1132(e)(2) (ERISA's venue provision); 28 U.S.C. § 1331.

The issue then is whether transferring the case to Connecticut would serve the convenience of the parties and promote the interests of justice. That turns largely on the extent to which Mr. Hamer's choice of forum is entitled to deference, given that the dispute's only connection to this district is Mr. Hamer and the role he played.

Mr. Hamer, of course, is not the employee or "plan participant" in this ERISA case. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."). But as trustee of the trust for Mr. Morrison's plan benefits, Mr. Hamer is still the real party in interest. Fed. R. Civ. P. 17(a)(1); *Est. of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) ("[A]s to claims held by an estate or trust, the executor, administrator, or trustee is the real party in interest.") (quoting Schwarzer et al., *Rutter Group Prac. Guide: Fed. Civ. P. Before Trial*, Ch. 7-A ¶ 7:7). As a real party in interest, Mr. Hamer's choice of forum is entitled to deference as usual. *Piper Aircraft Co.*, 454 U.S. at 255; *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, No. 17-cv-04384-JST, 2019 WL 1024962, at *3 (N.D. Cal. Mar. 4, 2019).

Also, as Mr. Hamer points out, "[b]ecause ERISA's broadly inclusive venue provisions show Congress's intent to ease plaintiffs' access to federal courts," deference to an ERISA plaintiff's choice of forum is "all the greater." *Ennis v. Aetna Life Ins. Co.*, No. 3:18-cv-01617-WHO, 2018 WL 4636197, at *2 (N.D. Cal. Sept. 24, 2018). The usual caveats still apply, though: the plaintiff's choice might "merit less consideration if (1) [the] operative facts occurred outside the forum [or] (2) the forum lacks interest in the parties or subject matter." *Id.*; *Frias v. Aetna Life Ins. Co.*, No. 14-cv-03146-TEH, 2014 WL 5364105, at *3 (N.D. Cal. Oct. 21, 2014) (according "only minimal consideration" to an ERISA plaintiff's choice of forum) (cleaned up).

[39] *See generally* Opp'n – ECF No. 30.

The operative facts in an ERISA case are where the claims were administered, where the employee worked and received medical treatment and employee benefits, where the employer and plan administrator are headquartered, and other "connections to the forum related to the [employee] benefits." *Midkiff v. Prudential Ins. Co. of Am.*, No. 19-cv-01656-JSW, 2019 WL 12469793, at *3–4 (N.D. Cal. Dec. 6, 2019); *Ennis*, 2018 WL 4636197, at *2–3; *Frias*, 2014 WL 5364105, at *3; *Devaux-Spitzley v. Prudential Ins. Co. of Am.*, No. 18-cv-04436-JST, 2019 WL 935137, at *3 (N.D. Cal. Feb. 26, 2019) (collecting cases).

Here, Mr. Morrison — the plan participant — lived in Connecticut and received his medical treatment and plan benefits there for twenty-seven years. His brother Douglas, who was his sole conservator from 1995 until 2020, also lived in Connecticut and received the plan benefits there (before transferring them to the San Francisco trust account). A Connecticut probate court governs Mr. Morrison's estate and trust and appointed Mr. Hamer. Mr. Morrison's attorneys were in Connecticut, and they and Douglas Morrison had frequent contact with the plan administrator. That administrator, and Mr. Morrison's employer, are headquarted not far from Connecticut (Newark and New York City, respectively).[40]

Mr. Morrison's successor trustee and co-conservator Mr. Hamer, on the other hand, lives across the country in San Francisco. This does mean the Northern District has at least some interest in the dispute: Mr. Hamer and another trustee have managed and disbursed Mr. Morrison's plan benefits from here, via the trust, since 2008. The trust's assets (the plan benefits) are held here, at least until they are disbursed. And Mr. Hamer pursued the administrative claim that preceded this lawsuit.

In substance, though, this district has functioned as a conduit for the plan benefits, whose object was in Connecticut. And as the defendants point out, the alleged underpayment of plan benefits harmed the plan participant in Connecticut.[41] Overall, Connecticut has a much greater local interest in the dispute. *See Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 607 F.2d 245, 247

[40] *See supra* Statement.

[41] Reply – ECF No. 34 at 8–10.

(9th Cir. 1979) (ERISA's purpose is to protect plan participants) (quoting 29 U.S.C. § 1001(b)); *Frias*, 2014 WL 5364105, at *2 (an ERISA breach takes place where the plan participant expects to receive benefits); *Midkiff*, 2019 WL 12469793, at *3–4 (the "connections to the forum related to the denial of benefits" matter most for determining the deference owed to an ERISA plaintiff's choice of forum).

Moreover, as the defendants argue, the Northern District's minimal interest in the dispute is confirmed by the fact that Mr. Morrison's special-needs trust is of local interest to Connecticut and not California.[42] Connecticut retains jurisdiction over trusts when the principal place of administration is outside the state. Conn. Gen. Stat. § 45a-499h(d). And when the beneficiary of a Connecticut special-needs trust dies, Connecticut receives certain amounts remaining in the trust. *Corcoran v. Dep't of Soc. Servs.*, 271 Conn. 679, 693 (2004) (quoting 42 U.S.C. § 1396p(d)(4)). The court thus accords only minimal consideration to Mr. Hamer's choice of forum.

At the hearing, Mr. Hamer contended that because he lives in this district, his choice of forum should matter more. But because Mr. Hamer is not the plan participant and instead only administered the plan benefits via a Connecticut special-needs trust, the overall factual context shows that the operative facts occurred in Connecticut and that state has a far greater local interest in the controversy. Mr. Hamer's residence thus does not carry the day. *Ennis*, 2018 WL 4636197, at *2.

Without deference to Mr. Hamer's choice of forum, and with the operative facts and local interest centered in Connecticut, the defendants have carried their burden to show that transfer is appropriate. *See, e.g.*, *Frias*, 2014 WL 5364105, at *2–5; *Midkiff*, 2019 WL 12469793, at *3–6; *Ennis*, 2018 WL 4636197, at *2–3; *M.K. v. Visa Cigna Network POS Plan*, No. 12-cv-04652-LHK, 2013 WL 2146609, at *3–5 (N.D. Cal. May 15, 2013). The convenience of parties and witnesses tilts towards Connecticut, because Douglas Morrison is there, all defendants are headquartered near there, and only Mr. Hamer is in this district. *Midkiff*, 2019 WL 12469793, at *3–4; *Ennis*, 2018 WL 4636197, at *3. And the other factors are neutral. *Midkiff*, 2019 WL

[42] *Id.* at 10–12.



United States District Court
Northern District of California

United States District Court
Northern District of California

12469793, at *4 ("Judicial review of an ERISA benefits determination is generally limited to the administrative record."); *Devaux-Spitzley*, 2019 WL 935137, at *5 ("discovery into Prudential's assembly of the administrative record" is still possible, but "[b]ecause any such evidence would not be found in the Northern District, this factor slightly favors transfer"); *Frias*, 2014 WL 5364105, at *5 ("ERISA is a federal statute. Consequently, the [federal transferee court] and the Northern District of California are equally familiar with the applicable law in this case[.]"); *Royal Queentex Enters. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000) ("Relative court congestion is at best, a minor factor in the section 1404 calculus.").

Mr. Hamer points out that because he is an individual and the defendants are large corporations with greater means, the defendants can more easily travel to distant states.[43] *Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000). Even so, the balance of factors weighs decisively in favor of Connecticut.

In sum, the court grants the defendant's motion to transfer venue to the District of Connecticut under § 1404(a).

## CONCLUSION

The court transfers the case to the District of Connecticut and declines to decide the motion to dismiss. This resolves ECF Nos. 19 and 26.

**IT IS SO ORDERED.**

Dated: June 16, 2023

LAUREL BEELER
United States Magistrate Judge

[43] Opp'n – ECF No. 30 at 15.